## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ERICKA TAYLOR, individually and on behalf all others similarly situated, | ) ) | |
| | ) | |
| Plaintiff, | ) | **CASE NO.** |
| | ) | |
| v. | ) | **CLASS ACTION** |
| | ) | |
| CCS FINANCIAL SERVICES, INC. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## CLASS ACTION COMPLAINT

Plaintiff, ERICKA TAYLOR, individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of her counsel, and on information and belief as follows:

### NATURE OF ACTION

1.    This case involves activities conducted by Defendant CCS Financial Services, Inc. ("CCS") in contacting individuals believed to be its debtors through use of prerecorded messages and automated calls in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., and the Federal Communications Commission ("FCC" or "Commission") rules promulgated thereunder, 47 C.F.R. § 64.1200 (hereinafter referred to as the "TCPA").

2.    Plaintiff brings this action for injunctive relief and statutory damages arising from the illegal activities of Defendant, who contacted the putative class members despite the fact that they had no relationship with Defendant.

3.      A class action is the best means of obtaining redress for the Defendant's wide-scale illegal robocalling program and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## JURISDICTION AND VENUE

4.      This matter in controversy exceeds $5,000,000, as each member of the proposed Class of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Accordingly, this Court has jurisdiction pursuant to § 1332(d)(2). Further, Plaintiff alleges a national class, which will result in at least one Class member belonging to a different state. Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

5.      This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

6.      This Court has personal jurisdiction over Defendant because the conduct at issue in this case occurred, among other locations, in Massachusetts, where Defendant is headquartered and placed the illegal calls.

7.      Venue is proper because a substantial portion of the events complained of occurred in this District.

## PARTIES

8.      Plaintiff Ericka Taylor is, and at all times mentioned herein was, an individual citizen of the State of Ohio residing in the City of Cleveland.

9.      Defendant Credit Collection Services ("CCS") is a corporation with its principal place of business at 725 Canton St., Norwood, Massachusetts 02062-2679.

## THE TELEPHONE CONSUMER PROTECTION
## ACT OF 1991 (TCPA), 47 U.S.C. § 227

10.     In 1991, Congress enacted the TCPA[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

11.     The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers."

12.     Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

13.     The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."[2]

14.     This statutory language dictates that "the term 'automatic telephone dialing system' means equipment which has the capacity—(1) to store numbers to be called *or* (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Marks v. Crunch San Diego, LLC,* 904 F.3d 1041, 1053 (9th Cir. 2018) (emphasis supplied).[3]

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*

[2] 47 U.S.C. § 227(b)(1)(A)(iii).

[3] In the past, the FCC has held that this definition is satisfied when a dialing system has the capacity to call "a given set of numbers" or when "dialing equipment is paired with . . . a database of numbers." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14,014, ¶ 133 (2003); *see also In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 566 (F.C.C. 2008) (rejecting argument that a dialing system "meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists" and reasoning that "the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective").

15.     According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[4]

16.     The 2003 FCC order defined a predictive dialer as "an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call."[5]

17.     The FCC concluded that "[t]he basic function of such equipment . . . [is] the capacity to dial numbers without human intervention."[6]

18.     A 2008 Declaratory Ruling "affirm[ed] that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."[7] And in yet another order issued in 2012, the FCC again reiterated that the TCPA's definition of an ATDS "covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly

---

[4] Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).
[5] *Id*. at 14,143 n. 31.
[6] *Id*. at 14,092.
[7] In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 ("2008 FCC Declaratory Ruling"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

or sequentially generated or come from calling lists."[8] In 2018, a decision struck down portions of a 2015 FCC Order, but "the prior FCC Orders are still binding."[9]

19.     Courts have also held that, based on the TCPA's statutory language, a predictive dialing system constitutes an ATDS under the TCPA.  *See, e.g., Marks*, 904 F.3d at 1053 ("Although Congress focused on regulating the use of equipment that dialed blocks of sequential or randomly generated numbers—a common technology at that time—*language in the statute indicates that equipment that made automatic calls from lists of recipients was also covered by the TCPA*.") (emphasis supplied); *accord Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638-39 (7th Cir. 2012).

20.     Further, courts have long held that that a "called party" under the TCPA is the recipient of the call, not the party the caller was intending to reach.[10]

21.     On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party.[11]

22.     The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."[12]

---

[8] In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 FCC Rcd. 15391, 15399 (2012).
[9] *Reyes v. BCA Fin. Servs., Inc*., Case No. 16-24077-CIV, 2018 WL 2220417, at *11 (S.D. Fla. May 14, 2018).
[10] *See, e.g., Osorio v. State Farm Bank, F.S.B*., 746 F.3d 1242, 1251 (11th Cir. 2014); *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638-39 (7th Cir. 2012).
[11] *2008 FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10).
[12] *Id.*

23.     In a portion unaffected by the D.C. Circuit, the 2015 FCC Order held that consumers may revoke consent through reasonable methods. Thus, consumers may revoke consent through any reasonable method, including orally: "[c]onsumers generally may revoke, for example, by way of a consumer-initiated call, directly in response to a call initiated or made by a caller, or at an in-store bill payment location, among other possibilities."[13]

## FACTUAL ALLEGATIONS

24.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

25.     In or around the summer of 2018, Plaintiff obtained a new cellular telephone number--((XXX) XXX-1952).

26.     Since obtaining her cellular number, Plaintiff has received dozens of "wrong number" calls, many of which were debt collection calls, from various companies, including Defendant.

27.     For example, on June 10, 2019 at 11:32 AM, Plaintiff received a call from telephone number 781-989-1000.

28.     This number is associated with CCS.

29.     Upon placing a call to telephone number 781-989-1000, an automated message states: "Thank you for calling Credit Collection Services…."

30.     In addition, a search of telephone number 781-989-1000 on the Internet indicates it is associated with Defendant.[14]

---

[13] 2015 Order at (¶ 64).
[14] *See* https://800notes.com/Phone.aspx/1-781-989-1000 ("They answer "CCS".  Credit Collections Services.").

31.     In receiving unwanted and unsolicited calls on her cellular telephone, Plaintiff suffered concrete harm in the form of lost time spent fielding the unwanted calls and attempting to get CCS to stop the calls, loss of use of her cellular telephone as the calls came in, and the invasion of privacy and intrusion upon her seclusion.

32.     Plaintiff did not provide her "prior express consent" allowing CCS to place telephone calls to Plaintiff's cellular phone. Indeed, Plaintiff was never a customer and/or debtor of CCS or CCS's clients, nor had she ever had any dealings with CCS whatsoever before CCS began calling her.

33.     In fact, CCS's representatives repeatedly asked for someone other than Plaintiff – a person whom Plaintiff does not know and with whom Plaintiff has no connection whatsoever.

33.     Upon information and good faith belief, and in light of the frequency, number, nature, and character of the calls at issue, Defendant placed its calls to Plaintiff's cellular telephone number by using an automatic telephone dialing system.

34.     Upon information and good faith belief, and in light of the frequency, number, nature, and character of the calls at issue, Defendant placed its calls to Plaintiff's cellular telephone number by using "equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018)

35.     Upon information and good faith belief, and in light of the frequency, number, nature, and character of the calls at issue, Defendant placed its calls to Plaintiff's cellular telephone number by using (i) an automated dialing system that uses a complex set of algorithms to

7

automatically dial consumers' telephone numbers in a manner that "predicts" the time when a consumer will answer the phone and a person will be available to take the call, or (ii) equipment that dials numbers and, when certain computer software is attached, also assists persons in predicting when a sales agent will be available to take calls, or (iii) hardware, that when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers, or (iv) hardware, software, or equipment that the FCC characterizes as a predictive dialer through the following reports and orders, and declaratory rulings: *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 17 FCC Rcd 17459, 17474 (September 18, 2002); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd 14014, 14092-93 (July 3, 2003); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd 559, 566 (Jan. 4, 2008).

36.     Upon information and good faith belief, Defendant placed its calls to Plaintiff's cellular telephone number for non-emergency purposes.

37.     Upon information and good faith belief, Defendant placed its calls to Plaintiff's cellular telephone number voluntarily.

38.     Upon information and good faith belief, Defendant placed its calls to Plaintiff's cellular telephone number under its own free will.

39.     Upon information and good faith belief, Defendant had knowledge that it was using an automatic telephone dialing system to place its calls to Plaintiff's cellular telephone number.

40.     Upon information and good faith belief, Defendant, as a matter of pattern and practice, uses an automatic telephone dialing system to place calls, absent prior express consent, to telephone numbers assigned to a cellular telephone service.

### Class Action Allegations

41.     Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following class:

> All persons throughout the United States (1) to whom CCS placed, or caused to be placed, a call, (2) directed to a number assigned to a cellular telephone service, but not assigned to the intended recipient of CCS's calls, (3) by using an automatic telephone dialing system or an artificial or prerecorded voice, (4) within four years preceding the date of this complaint through the date of class certification.

42.     Excluded from the class are Defendant, Defendant's officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

43.     Upon information and belief, the members of the class are so numerous that joinder of all of them is impracticable.

44.     The exact number of the members of the class is unknown to Plaintiff at this time, and can be determined only through appropriate discovery.

45.     The members of the class are ascertainable because the class is defined by reference to objective criteria.

46.     In addition, the members of the class are identifiable in that, upon information and belief, their telephone numbers, names, and addresses can be identified in business records maintained by Defendant and by third parties.

47.     Plaintiff's claims are typical of the claims of the members of the class.

48.     As it did for all members of the class, Defendant used an automatic telephone

dialing system to place calls to Plaintiff's cellular telephone number.

49.    Plaintiff's claims, and the claims of the members of the class, originate from the same conduct, practice, and procedure on the part of Defendant.

50.    Plaintiff's claims are based on the same theories as are the claims of the members of the class.

51.    Plaintiff suffered the same injuries as the members of the class.

52.    Plaintiff will fairly and adequately protect the interests of the members of the class.

53.    Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the class.

54.    Plaintiff will vigorously pursue the claims of the members of the class.

55.    Plaintiff has retained counsel experienced and competent in class action litigation.

56.    Plaintiff's counsel will vigorously pursue this matter.

57.    Plaintiff's counsel will assert, protect, and otherwise represent the members of the class.

58.    The questions of law and fact common to the members of the class predominate over questions that may affect individual members of the class.

59.    Issues of law and fact common to all members of the class are:

   a.  Defendant's conduct, pattern, and practice as it pertains to dialing wrong or reassigned cellular telephone numbers;

   b.  Defendant's violations of the TCPA;

   c.  Defendant's use of an automatic telephone dialing system as defined by the TCPA; and

   d.  The availability of statutory penalties.

60.     A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

61.     If brought and prosecuted individually, the claims of the members of the class would require proof of the same material and substantive facts.

62.     The pursuit of separate actions by individual members of the class would, as a practical matter, be dispositive of the interests of other members of the class, and could substantially impair or impede their ability to protect their interests.

63.     The pursuit of separate actions by individual members of the class could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.

64.     These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the class.

65.     The damages suffered by each individual member of the class may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the class to redress the wrongs done to them.

66.     The pursuit of Plaintiff's claims, and the claims of the members of the class, in one forum will achieve efficiency and promote judicial economy.

67.     There will be little difficulty in the management of this action as a class action.

68.     Defendant has acted or refused to act on grounds generally applicable to the members of the class, making final declaratory or injunctive relief appropriate.

## Count I
## Violation of 47 U.S.C. § 227(b)(1)(A)(iii)

69.     Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-68.

70.     Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by utilizing an automatic telephone dialing system to place calls to Plaintiff's cellular telephone number without consent.

71.     As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff, and the members of the class, are entitled to damages in an amount to be proven at trial.

### Prayer for Relief

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a)  Determining that this action is a proper class action;

b)  Designating Plaintiff as a class representative under Federal Rule of Civil Procedure 23;

c)  Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

d)  Adjudging and declaring that Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii);

e)  Enjoining Defendant from continuing its violative behavior, including continuing to place calls to Plaintiff's cellular telephone number, and to the cellular telephone numbers of members of the class;

f)  Awarding Plaintiff and the class damages under 47 U.S.C. § 227(b)(3)(B);

g)  Awarding Plaintiff and the members of the class treble damages under 47 U.S.C. § 227(b)(3);

h)  Awarding Plaintiff and the class reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i)   Awarding Plaintiff and the members of the class any pre-judgment and post-judgment interest as may be allowed under the law; and

j)   Awarding such other and further relief as the Court may deem just and proper.

### Demand for Jury Trial

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Dated: October 1, 2019                     Respectfully submitted,

                                           **ERICKA TAYLOR**

                                            /s/ *Anthony Paronich*

                                           **PARONICH LAW, P.C.**
                                           Anthony I. Paronich
                                           Paronich Law, P.C.
                                           350 Lincoln Street, Suite 2400
                                           Hingham, MA 02043
                                           (508) 221-1510
                                           anthony@paronichlaw.com

                                           **KOZONIS & KLINGER, LTD.**
                                           Gary M. Klinger (*pro hac vice forthcoming*)
                                           4849 N. Milwaukee Ave., Ste. 300
                                           Chicago, Illinois 60630
                                           Phone: 312.283.3814
                                           Fax: 773.496.8617
                                           gklinger@kozonislaw.com

                                           *Attorneys for Plaintiff and*
                                           *the Proposed Class*